UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BAYVIEW LOAN SERVICING, LLC,

        Plaintiff,

v.                                      Case No. 2:05-cv-254
                                      HON. ROBERT HOLMES BELL

EARL FORD MCNAUGHTON and
PAMELA S. MCNAUGHTON,

        Defendants.

_____/

## OPINION

Bayview Loan Servicing, LLC (hereinafter "Bayview"), filed this civil action to recover amounts due pursuant to two promissory notes executed by defendants. The two promissory notes and related mortgages were for properties located in Chippewa County, Michigan, and Hillsdale County, Michigan. Defendants defaulted on both loans and foreclosure on the properties followed. Both properties were purchased by IB Property Holdings and Bayview. The mortgage foreclosure sales resulted in deficiencies owed on both notes. Defendants do not dispute that they defaulted on the Chippewa County property loan and the Hillsdale County property loan. See Joint Status Report, filed February 15, 2006 (Docket #14).

On June 6, 2006, Chief Judge Robert Holmes Bell entered a Consent Judgment in this action. In that Consent Judgment, defendants consented to a deficiency amount of $1,413,105.11 with respect to the Peck Island property in Chippewa County and a deficiency amount of $239,603.18 with respect to the Hillsdale County property. Following entry of the Consent Judgment, a notice of judgment lien was filed with this Court on August 4, 2006. Since the notice of judgment lien was filed, plaintiff's efforts to engage in discovery regarding defendants' assets

have been unsuccessful.  Efforts to schedule the depositions of the defendants became protracted. Eventually, plaintiff was required to file a motion seeking an order from this Court allowing for and scheduling the depositions of the defendants.  A hearing was held in this matter on that motion on January 25, 2007.  At that hearing, the parties were able to agree to a date and time for the depositions of the defendants.  On the record, defendants indicated that they would produce before the scheduled depositions the requested documents pursuant to the subpoena scheduling the depositions.  At no time did defendants' counsel indicate that the records would not be produced and that defendants would not testify at their depositions based on a Fifth Amendment claim.  Shortly before the depositions were scheduled to occur, the Court conducted a telephone conference on February 28, 2007.  During that conference, defendants indicated that they were going to refuse to attend the depositions and refuse to produce the requested documents and were moving for a protective order.  This Court issued an order setting a schedule for defendants' motion for protective order and setting the matter for hearing in May of 2007.  Defendants failed to file a privilege log with their motion for protective order, which was filed on March 14, 2007.  Another telephone conference was held with the undersigned on March 27, 2007, and defendants were provided until May 22, 2007, to file a privilege log.  Further briefing was required and the matter was set for hearing.  The privilege log was filed, the issues have been fully briefed, and a hearing was held on July 9, 2007.

Defendants have moved for a protective order maintaining that they have a valid Fifth Amendment right to assert in response to the discovery request submitted by plaintiffs.  According to defendants, they are targets of an ongoing criminal investigation and cannot be compelled to answer questions or produce documents in a civil lawsuit that would violate their Fifth Amendment right against self incrimination.  As defendants recognize, the Fifth Amendment does not apply to all incriminating evidence, rather only compelled evidence from the accused which is testimonial

in nature and incriminating.  *See Fisher v. United States*, 425 U.S. 391, 408 (1976).  The Fifth

Amendment privilege against self incrimination does not apply solely to oral testimony.  In this case,

defendants rely upon the "act of production" privilege which was recognized by the Supreme Court

in *United States v. Doe*, 465 U.S. 605, 612 (1983).  As was explained in *United States v. Back to*

*Health Chiropractic*, 2005 WL 3418710 (E.D. Tenn.):

> In *United States v. Grable*, 98 F.3d 251, 254 (6th Cir.1996), *cert.*
> *denied*, 519 U.S. 1059, 117 S.Ct. 691, 136 L.Ed.2d 614 (1997), the
> United States Court of Appeals for the Sixth Circuit ("Sixth Circuit")
> discussed the Fifth Amendment "act of production" privilege
> recognized by the Supreme Court in *United States v. Doe*, 465 U.S.
> 605, 612-13, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1983). The Sixth
> Circuit noted that in *Doe* the Supreme Court held that although the
> "Fifth Amendment privilege against self-incrimination does not
> extend to corporate documents, personal documents do merit at least
> partial protection." *Grable*, 98 F.3d at 253. While the contents of
> personal records are not privileged, the act of physically producing
> the documents may be privileged. *Id.* "A government subpoena
> compels the holder of the document to perform an act that may have
> testimonial aspects and an incriminating effect." *Doe,* 456 U.S. at
> 612-13. Specifically,
>
>> If he produced the documents listed in the summons,
>> a taxpayer . . . would be establishing their existence
>> and authenticity as well as verifying his possession of
>> them.  *Doe v. United States*, 487 U.S. 201, 209, 108
>> S.Ct. 2341, 101 L.Ed.2d 184 (1988). This act of
>> production "would be sufficiently testimonial and
>> incriminating to activate [a taxpayer's] fifth
>> amendment privilege. *United States v. Argomaniz*,
>> 925 F.2d 1349, 1356 (11th Cir.1991).
>
> *Grable*, 98 F.3d at 255. "'Compliance with the subpoena tacitly
> concedes the existence of the [documents] demanded and their
> possession or control by the taxpayer. It also would indicate the
> taxpayer's belief that the papers are those described in the subpoena.'"
> *United States v. Teeple*, 286 F.3d 1047, 1049 (8th Cir.2002) (*quoting*
> *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 48 L.Ed.2d
> 39 (1976)).

*Id*. at 8-9.

As was explained in *In re David Schick*, 25 B.R. 4 (Bkrtcy. S.D.N.Y. 1997):

The invocation of the "act of production" privilege implicates a two part inquiry: (1) the court must determine whether the production of documents is testimonial, and (2) the party asserting the privilege must show that it is incriminating, *i.e.,* that it provides "a link in the chain of incrimination". *See In re DG Acquisition Corp.*, 208 B.R. 323, 330 (Bankr.S.D.N.Y.1997). The party does not discharge the burden simply by asserting that he will incriminate himself by producing the documents:

The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself-his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified....

*Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 817-18; *accord United States v. Fox*, 721 F.2d at 40; *see In re Stoecker*, 103 B.R. 182, 188 (Bankr.N.D.Ill.1989); *cf. In re Martin-Trigona*, 732 F.2d 170, 176 (2d Cir.) (debtor's position that "he should be the final arbiter of the necessity of his testimony ... mocks the court's role as a truthseeker"), *cert. denied,* 469 U.S. 859, 105 S.Ct. 191, 83 L.Ed.2d 124 (1984).

The accused must provide enough information to enable the Court to "conduct a factual inquiry to determine the incriminating potential of the documents sought and the act of production against the privilege asserted." *In re Stoecker*, 103 B.R. at 188. This does not require the party to disclose the contents of the documents, and in the process, compromise the privilege he seeks to protect. He may meet his burden by submitting a written explanation, *in camera* if requested, identifying the documents held in his personal capacity, and as to each document, explaining in general or circumstantial terms why production is incriminating. *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.*, 115 F.R.D. 528, 531-32 (D.Mass.1987). If the documents fall into categories, the court may make the determination on a category by category basis, *Butcher v. Bailey*, 753 F.2d at 470; *see FSLIC v. Hardee*, 686 F.Supp. 885, 887 (N.D.Fla.1988), but the party asserting the privilege bears the burden of classifying the documents. *Butcher v. Bailey*, 753 F.2d at 470. As long as sufficient reasons are given to permit the court to independently determine that a real danger exists, the privilege will be upheld. *Id.*; *McIntyre's Mini Computer Sales Group, Inc. v.*

> *Creative Synergy Corp.*, 115 F.R.D. at 532; *In re Stoecker*, 103 B.R. at 188 (court must be solicitous of claim of privilege and give party the benefit of any doubt).

*Id*. at 9-10.

The burden of proving the existence of a valid Fifth Amendment privilege is with the asserter of that privilege. *See In re Grand Jury Subpoena*, 973 F.2d 45, 50 (1st Cir. 1992); *Herman v. Galvin*, 40 F.Supp.2d 27, 28 (D.Mass. 1999). As the Court explained in *United States v. Dean*, 23 Fed. Appx. 448:

> Generally, an individual may have a fifth amendment privilege to refuse to produce documents in response to an IRS summons. *See United States v. Doe*, 465 U.S. 605, 612-13, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *United States v. Grable*, 98 F.3d 251, 253 (6th Cir.1996). However, this "act of production" privilege applies only on a document-by-document basis, and the district court must individually review in camera any document to which a summoned party specifically objects. *Grable*, 98 F.3d at 257. Here, Dean submitted to the district court what it characterized as a "disorganized array of documents," along with only a general blanket assertion of fifth amendment privilege.

*Id*. at 450; *see also Aurora Loan Services, Inc. v. Posner, Posner & Assoc.*, __ F.Supp.2d __, 2007 WL 2141553 (S.D.N.Y. 2007) (failure to provide an adequate privilege log is basis for rejecting a claim of attorney-client privilege).

In this case, defendants maintain that the very act of production "is an affirmation of those requests indicating that certain assets or property are owned, held, or controlled by the McNaughtons and would serve and be useful by federal prosecutors as an admission when presenting evidence to the grand jury." McNaughtons'Defendants' Reply Brief in Support of Motion For Protective Order, Docket #57, at page 10. Defendants go on to indicate, "It is clear the mere act of production in response to any one of these requests could be an incriminating and damaging admission by the McNaughtons in the criminal investigation. It may not be the contents of the

- 5 -

documents that the prosecutor is after, but the 'link in the chain of evidence' that connects the McNaughtons to those documents in an incriminating manner." *Id.* at pages 10-11.

In support of their request for a protective order, the Court was provided with defendants' privilege log on May 22, 2007. This privilege log identifies 193 documents. Each document is listed individually and the reason for the claimed privilege is identified for each document. With respect to all of the documents except three, the reason stated for the privilege is "Fifth Amendment/Act of Production." There are three documents which identify the reason for the privilege as "Fifth Amendment/Act of Production – Attorney/Client Communications." Privilege Log, Docket #53, Nos. 32, 33 and 86.

As stated above, for the Fifth Amendment "act of production" privilege to apply, production of the document must have a testimonial aspect. It is not the contents of the documents which need be testimonial, but the production of the documents must be found to be testimonial. Moreover, "only if the act of production in and of itself would, in addition to being compelled, be both 'testimonial and incriminating,' [does] the Fifth Amendment privilege attach. . . . Thus, there are two inquiries here: (1) is the act of production 'testimonial'; and (2) is the act of production itself 'incriminating'?" *United States v. Koubriti*, 297 F.Supp.2d 955, 968 (E.D. Mich. 2004).

The documents identified in the privilege log fill nine bankers boxes and include over 13,000 pages. The privilege log identifies them as 193 separate documents. However, my review of some of the individually identified documents indicates that they are a compilation of documents. Initially, I find that defendants' privilege log is wholly inadequate. It fails to identify the alleged testimonial nature of any of the documents and does not identify why those documents would be incriminating. Defendants have attempted to rely upon a blanket statement that the documents are testimonial in nature and could be incriminating. Defendants maintain that it is "clear" that the act

- 6 -

of production could be incriminating and damaging to the McNaughtons.  My review of those documents establishes to the undersigned that it is far from "clear."  As an example, document No. 166 is an appraisal report of the Peck Island 52.5 acre site which is the subject of this lawsuit.  The Consent Judgment has been entered and defendants have admitted to purchasing the property and defaulting on the payments.  Document No. 166 is an appraisal report prepared in conjunction with the purchase of this property.  I find no basis to conclude that the act of production of this document is testimonial or incriminating to defendants.  More importantly, it is not this Court's job to do defense counsel's work for defendants.  Counsel for defendants had an obligation to identify for the Court the specific testimonial nature of each document and how the act of production of that document could be incriminating to defendants.  Defendants have completely failed in meeting their burden with respect to their assertion of the act of production privilege.  Furthermore, many of the documents are corporate records and are so identified in the log.  There is serious doubt that the act of production privilege could apply to these documents even if defendants had met their burden of establishing that they were testimonial in nature and incriminating.

Furthermore, even if I found some of the documents were testimonial and incriminating, defendants have waived their Fifth Amendment rights by disclosing assets and information in responding to requests for information.  A party may waive the Fifth Amendment privilege.  *See Jenkins v. Anderson*, 447 U.S. 231 (1980); *Maness v. Meyers*, 419 U.S. 449, 466 (1975); *Schlak v. Teledine, Inc.*, 1991 U.S. Dist. Lexis 1974, at 3-4; *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 317 (2nd Cir. 1979); *Charter Fed. Sav. Assoc. v. Rezak*, 140 B.R. 49 (Bkrtcy. E.D.N.Y. 1992).  The McNaughtons in response to interrogatories identified two checking accounts they held in an email of September 28, 2005. Matt Holman identified for Joanne Schneider at Bayview a variety of assets held or previously held by the McNaughtons.  Defendants cannot seek

to assert a Fifth Amendment privilege to information they have already disclosed during the course of this litigation or in discussions prior to the filing of this lawsuit.

Defendants maintain that three of the documents, Nos. 32, 33 and 86, contain attorney/client communications which should not be disclosed.  I have reviewed those documents and the documents do appear to include some correspondence between defendants and their counsel. Defendants will not be required to produce attorney/client communications.  However, some of the documents included within those three documents are not attorney/client communications and are subject to production.

Accordingly, defendants' motion for protective order will be granted with respect to attorney/client communications which are contained in document Nos. 32, 33 and 86.  In all other respects, defendants' motion for a protective order will be denied.  In addition, plaintiff is entitled to reasonable costs and attorneys fees incurred in responding to defendants' motion.


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 22, 2007